828 F.2d 19
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Minnie CRUMBLEY, Plaintiff-Appellee,
v.
Robert W. SWIETYNIOWSKI, Mayor of North Olmsted; Joseph P.
Corrigan, Service Director, City of North Olmsted;
City of North Olmsted, Defendant-Appellants.
 Nos. 86-3531, 86-3693 and 86-4058
 United States Court of Appeals, Sixth Circuit.
 September 1, 1987.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and WISEMAN,* Chief District Judge.
 PER CURIAM.
 
 
 1
 The defendants appeal the jury verdict in favor of Minnie Crumbley who filed suit under 42 U.S.C. Sec. 1983 claiming she was fired from her job with the City of North Olmsted because of her political beliefs, in violation of the first amendment. Crumbley was awarded $15,800 in back wages, $10,000 in compensatory damages, and attorney fees, costs, and interest, and was ordered reinstated with the city. The defendants argue that the district court erred in denying their motion for a directed verdict, and erred in ordering reinstatement and in allowing attorney fees and costs. They also contest a jury instruction that stated that certain of Crumbley's activities were constitutionally protected.
 
 
 2
 In 1977, defendant Robert Swietyniowski ran for mayor of North Olmsted. Crumbley, who at the time was an officer of the North Olmsted Democratic Club, campaigned for Swietyniowski. After his election, Swietyniowski appointed defendant Joseph Corrigan, another campaign worker and member of the Democratic Club, to be service director for the city. Corrigan hired Crumbley as his secretary.
 
 
 3
 In 1981 when Swietyniowski ran successfully for re-election, Crumbley, still a Democratic Club officer, again supported him. During his second term, however, Crumbley's enthusiasm for the mayor began to wane. In the fall of 1984, Crumbley informed Corrigan that she would not be supporting Swietyniowski in his 1985 re-election bid.
 
 
 4
 In January 1985 Swietyniowski, a former member of the North Olmsted Democratic Club, sought reinstatement to the organization. The club rejected his application by a margin of 45 to 1. His request was reconsidered at a meeting in February and was again denied by a vote of 28 to 22. Prior to the second vote a number of members spoke on the mayor's application. Both Crumbley and her husband spoke critically of the major; Crumbley's husband also spoke critically of Corrigan. Corrigan spoke in support of the mayor.
 
 
 5
 On February 22, 1985, Corrigan sent Crumbley a letter of dismissal. In the letter he alluded to the critical comments made by Crumbley's husband at the political meeting. Swietyniowski was defeated in the June primary and, soon after the Republican candidate won the general election in November, Corrigan was replaced as service director.
 
 
 6
 Crumbley filed suit in April 1985 claiming that her discharge violated her rights to freedom of speech and association as protected by the first and fourteenth amendments. She charged that her dismissal was motivated by one or more of the following factors: 1) her affiliation with the North Olmsted Democratic Club; 2) her failure to support Swietyniowski during his third re-election campaign; 3) her husband's remarks during the political meeting; 4) her participation in efforts to unionize city employees; and 5) her decision to file a complaint with the Ohio Civil Rights Commission after being denied an interview for a promotion within the service department. After a jury trial Crumbley was awarded back pay, additional damages, attorney fees and costs, and was reinstated to city employment.
 
 
 7
 The defendants argue that the court should have granted them a directed verdict. They contend that because Crumbley was employed as Corrigan's private secretary, Corrigan could discharge her, as a matter of law, simply because their working relationship had become strained. We disagree. The critical question in assessing Crumbley's discharge is whether Corrigan could prove that Crumbley's political affiliation was an appropriate requirement for the effective performance of her public duties. Branti v. Finkel, 445 U.S. 507, 518 (1980). The evidence on this point was insufficient for the district court to have directed a verdict in defendant's favor at the close of plaintiff's case. The court properly left for the jury the determination of the nature of Crumbley's job and of the factors influencing Crumbley's termination.
 
 
 8
 The defendants also object to jury instructions in which the court stated that the following activities were constitutionally protected: 1) Crumbley's assertion that she would not support Swietyniowski in his bid for a third term; 2) Crumbley's association with the North Olmsted Democratic Club; and 3) Crumbley's failure to refute her husband's critical comments at the February 1985 political meeting. The court instructed the jury that Crumbley had only to prove that one of these activities was a substantial factor in her dismissal in order to satisfy her burden of proof.
 
 
 9
 We find no error in the district court's instructions that, as a matter of law, these activities were constitutionally protected. We think it especially ludicrous for the defendants to argue that Crumbley could be dismissed because of remarks made by another. We do not presume that wives acquiesce in the personal views of their husbands, nor do we place an affirmative duty on wives to disavow observations with which they disagree.
 
 
 10
 Having considered the objections raised to the jury instructions we find no error. Furthermore, we find that the jury verdict is supported by the evidence and that the remedy ordered flows from this verdict.
 
 
 11
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation